In the Matter of the Application of TIMOTHY D. POUCHER, Individually and as President of the FEDERATION OF TEACHERS' ASSOCIATION, on Behalf of Himself and All Others, Similarly Situated, Appellant, for a Peremptory Mandamus Order against FIORELLO H. LAGUARDIA and Others, as Members of and Constituting the BOARD OF ESTIMATE AND APPORTIONMENT OF THE CITY OF NEW YORK, Respondents.

First Department, February 23, 1934.

*Austin B. Mandel*, for the appellant.

*Henry J. Shields* of counsel [*Willard S. Allen* with him on the brief; *Paul Windels, Corporation Counsel*], for the respondents.

MARTIN, J. The petition of Timothy D. Poucher alleges that prior to the commencement of this proceeding the teachers' retire-

ment board, in accordance with the provisions of section 1092 of the Greater New York Charter, submitted to the board of estimate and apportionment an itemized estimate of the amount necessary to be appropriated by the city of New York to the various funds to complete the payment of the obligations of the city accruing during the fiscal year ending December 31, 1934. The estimated amount necessary for pension reserve fund No. 2 was $5,253,803, and for the contingent reserve fund the sum of $4,253,228.

It is further alleged that the board of estimate and apportionment in the tentative budget for 1934 made no provision whatsoever for these items; that demand has been made upon the defendants constituting the board of estimate and apportionment that the items be restored to the tentative budget but that the board of estimate and apportionment has refused to include the items therein.

The answer of the board of estimate, verified December 21, 1933, alleges that the final budget of the city for 1934 as fixed by the board contains the following appropriations for the teachers' retirement system of the city — pension reserve fund No. 2, $4,503,803; contingent reserve fund, $4,253,228. The difference between the appropriation and the amount requested in the pension reserve fund No. 2 is $750,000.

The statute relating to the making of such appropriations providing for funds for the teachers' retirement system is very clear. There are two requirements set out in subdivision G of section 1092 of the Greater New York Charter, as follows: " Upon the basis of each acturial determination and appraisal provided for in this act, the retirement board shall prepare and submit to the board of estimate and apportionment on or before the fifteenth day of September in each year an itemized estimate of the amounts necessary to be appropriated by the city to the various funds to complete the payment of the said obligations of said city accruing during the ensuing fiscal year."

And the second and more important provision directs as follows: " The board of estimate and apportionment and the board of aldermen shall *make an appropriation which shall be sufficient* to provide for such obligations of the city of New York and the amounts so appropriated shall be included in the tax levy and shall be paid by the comptroller into the various funds created by this act."

When these two provisions of the charter are read together the intention of the Legislature is indicated to be that the " estimate " submitted by the retirement board shall guide but not control the action of the board of estimate and apportionment.

The second direction contained in the above provisions gives the appropriating body the discretion to decide the amount of the "appropriation which shall be sufficient to provide for such obligations." The board of estimate and apportionment must finally determine the fact of sufficiency. If the Legislature had intended that the "estimate of the amounts necessary" should control the action of the appropriating body, it would have found occasion to express that direction in more clear and certain language.

The Legislature is familiar with the language required to compel the board of estimate and apportionment to make necessary appropriations. Such appropriations are frequently left to the discretion of the board of estimate. To show the distinction we quote from section 14 of the Public Service Law where it is mandatory upon the board of estimate to make certain appropriations. It is there provided: " Such appropriation shall be made forthwith upon presentation of such a requisition without revision or reduction and without the imposition of any conditions or limitations by such board or body, and such appropriation by it is hereby declared to be a ministerial act. If such board or body shall fail to appropriate such amount as such transit commission shall deem requisite and necessary, such commission may apply to the appellate division of the supreme court in the first judicial department, on notice to such board or body, for an order requiring such board or body to make such appropriation."

It is apparent that the Legislature intended that the board of estimate should have some control over the "estimate" submitted by the teachers' retirement board. How else could mistaken estimates be corrected or controlled? Otherwise, an over-zealous board might very well adopt an overreaching policy of demanding an amount greatly in excess of the actual needs of the system, and the city be powerless to control such policy, or prevent any such abuse by a board wholly interested in obtaining large appropriations.

There was an excess or surplus appropriation in the retirement fund of $2,000,000 in 1933, and that became and remained the property of the teachers' retirement system. Under subdivision E of section 1092 of the Greater New York Charter it is provided: " The members of the retirement board shall be the trustees of the several funds created by this act, and shall have exclusive control and management of said funds."

In view of that provision, it seems that the city may have no control of any excess amount appropriated for the teachers' retirement system in compliance with a requested "estimate;" that in this respect the excess differs from excess appropriations made

to other city departments, the surplus of which the board of estimate and apportionment has power, under section 237 of the Greater New York Charter, to apply to a " tax and appropriation surplus and deficiency account."

There appears to be no course open for the city where prior appropriations have exceeded the proper amount except to take that fact into consideration the following year when new appropriations {are made. In that manner only will the taxpayers who are entitled to some consideration be protected.

The order should be modified by granting an alternative order of mandamus, at which time all the facts may be established, and as so modified affirmed, without costs.

FINCH, P. J., MERRELL, O'MALLEY and UNTERMYER, JJ., concur.

Order modified by granting an alternative order of mandamus, and as so modified affirmed, without costs. Settle order on notice.